UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MAC PROJECT LLC,<br><br>  Plaintiff,<br>v.<br><br>HIGH LONESOME CLAIMS, *et al.*,<br><br>  Defendants. | Case No. 3:24-cv-00217-MMD-CSD<br><br>ORDER |

**I.  SUMMARY**

This action arises from a dispute over the ownership of several placer mining claims ("Claims"[1]) in White Pine County, Nevada. (ECF No. 55 ("Amended Complaint").) Plaintiff Mac Project, L.L.C. ("MAC") purchased the Claims from their prior owner, Infinity Mine, L.L.C. ("Infinity"), and now brings suit against Defendants/Counterclaimants[2], who began recording new certificates of location on the Claims shortly after MAC's purchase. (*Id.*) MAC seeks declaratory and injunctive relief and to quiet title, as well as tort damages. (*Id.*) At an August 13 hearing on preliminary relief, amidst increasing tensions at the site of the Claims, the parties stipulated to the terms of a limited interim restraining order. (ECF Nos. 51, 56 ("Hearing").) The Court also directed an expedited briefing schedule for summary judgment motions, recognizing that the dispute turns on a narrow question of

---

[1]The Claims are Solomon 1, 2, 3, 4, 6, and 7 and MAV # 5A, 5C, 5D, 5E, 5F, and 5G. (ECF Nos. 1 at 3-4, 55.) Plaintiff concedes that claim MAV # 5B has been lost. (ECF No. 30 at 3.)

[2]Individual Defendants are Richard W. Sears; Leslie A. Sears; Nikolai L. Dobrescu; Kellie Ann Dobrescu; Steven L. Dobrescu; Teena K. Dobrescu; Dave Southam; Camie Southam; Clay Sears; Lisa Sears; Michael S. Pasek; June Salisbury, Phil Salisbury, High Lonesome Claims ("HLC"); and High Lonesome Mining, Inc. (ECF No. 55.) Plaintiff also sues White Pine County. (*Id.*) Defendants HLC, Pasek and Salisbury bring counterclaims for injunctive and declaratory relief, as well as tort claims, against Plaintiff and others. (ECF No. 61.)

law—the impact of prior-owner Infinity's untimely recording of an affidavit to hold the Claims under federal and state mining statutes. (*Id.*)

Now before the Court are Plaintiff's motion for partial summary judgement (ECF No. 58 ("Plaintiff's Motion"))[3] and Defendants HLC, Mike Pasek, June Salisbury and Phil Salisbury's motion for summary judgment (ECF No. 64 ("Defendants' Motion"))[4]. The Court permitted Defendants to supplement their Motion. (ECF No. 73 ("Supplement").)[5] Also before the Court is Defendant White Pine County's motion to dismiss. (ECF No. 62.)[6] Because the Court finds that Infinity's defective recordings did not result in forfeiture of the Claims, the Court grants Plaintiff's Motion as to MAC's request for a Court judgement that Defendants' claims were void *ab initio*.[7] The Court denies Defendants' Motion. Finally, because Plaintiff fails to state a claim under 42 U.S.C. § 1983 against White Pine County, the Court grants White Pine County's motion to dismiss (ECF No. 62).

## II. BACKGROUND

The following facts are undisputed unless otherwise noted. On March 31, 2023, MAC entered into a written agreement with Infinity to purchase certain unpatented mining claims in White Pine County. (ECF No. 8-2 at 6-17.) The purchase agreement gave MAC the right to commence its mining activities on the Claims before closing. (*Id.* at 7.) MAC maintains that it began its excavation and exploration activities in July 2023, subsequently

---

[3]Defendants did not file an opposition to Plaintiff's Motion, but responded to the arguments therein in their own Motion (ECF No. 64).

[4]Plaintiff filed a response. (ECF No. 66.) Defendants did not file a reply, but moved to supplement their original summary judgment filing (ECF No. 73).

[5]Plaintiff moved to strike Defendants' motion to amend or supplement (ECF No. 74). Defendants responded (ECF No. 79) and Plaintiff replied (ECF No. 82). The Court denied the motion to strike but noted that it would consider the arguments articulated in that motion and the responsive filings in considering the merits of Defendants' Supplement. (ECF No. 83.) The Court warned the parties that additional filings unrelated to the merits would result in further delay to the original expedited schedule. (*Id.*)

[6]Plaintiff responded (ECF No. 65) and White Pine County replied (ECF No. 70).

[7]The Court does not address Plaintiff's other tort claims in this order.

holding a "Grand Opening" event, moving machinery and other equipment to the site, and building infrastructure, including a mining headquarters and a residential camp. (ECF Nos. 8-2 at 7-8; 30-3; 58 at 3-4.) Defendants dispute whether MAC has in fact been continuously mining since July 2023, as well as the extent of the equipment involved.[8] (ECF No. 64 at 4-5.)

On August 24, 2023, prior to closing its sale to MAC, Infinity timely paid the Bureau of Land Management ("BLM") an annual maintenance fee for the Claims in accordance with 30 U.S.C. § 28f(a)(1), as reflected in the BLM serial register. (ECF No. 8-2 at 7-8, 29.)[9] On October 30, Infinity sent the White Pine County Recorder's Office its affidavit of intent to hold the Claims ("2023 Affidavit to Hold") and paid the associated fee with a check. (*Id.* at 6-11, 84-87.) The recording of that Affidavit to Hold was due on November 1, 2023. *See* NRS § 517.230. Infinity's 2023 Affidavit to Hold, however, was ultimately recorded five days late—on November 6. (ECF No. 8-2 at 6-11, 84-87.) Plaintiff maintains that this delay occurred because Infinity overpaid the fee and the County Recorder's Office could not accept a check with an excess payment; the County Recorder's Office called Infinity on November 6 to request that they resubmit their payment in a lesser amount, and Infinity paid by credit card over the phone. (*Id.*) Defendants dispute that the overpayment was the cause of the delayed filing, pointing to an absence of evidence to suggest that the Affidavit to Hold timely arrived at the County Recorder's Office before

---

[8]MAC maintains that it has been continuously mining during this period, but Defendants dispute that Plaintiff was legally entitled to engage in mining activities in 2023 through 2024 and assert that, because of a 2022 cease and desist order, any of MAC's mining activities since July 2023 constitute "high grading" – that is, stealing gold. (ECF No. 64 at 4.) They also assert that throughout the period from October 2023 through April 2024, the Claims appeared abandoned; all operating machinery had been removed, and no power was provided to the premises by local electrical providers. (*Id.* at 5.) Finally, Defendants assert that Plaintiff's claim that "millions of dollars of equipment" is waiting to mine gold is also true for Defendants, and that there is no evidence as to ownership of equipment at the site. (*Id.*)

[9]Infinity did not pay a fee for the claim MAV 5B, which had been lost to adverse possession. (ECF No. 8-2 at 84-87.) MAV 5B is not part of the disputed Claims in this action.

1  November 1. (ECF No. 64 at 4.) Regardless, there is no question that the recording was
2  late.
3     A few months later, on January 3, 2024, Defendant Michael Pasek began erecting
4  placer location monuments upon some of the MAV Claims.  (ECF No. 1-1 at 41-46.) He
5  named them Stormy B, C, D, E, and F (collectively, "Stormy Claims") and recorded their
6  certificates of location and maps with the County Recorder's Office, believing they were
7  open to mineral relocation. (*Id.*) Three weeks later, at the end of January, other individual
8  Defendants—Richard and Leslie Sears, Steven and Teena Dobrescu, Dave and Camie
9  Southam, Niko Dobrescu, and Kellie Dobrescu—began erecting placer location
10 monuments upon additional Solomon Claims. (*Id.* at 61-77.) They named them HLC-1, 2,
11 3, and 7 (collectively, "HLC Claims") and recorded their certificates of location and maps
12 with the County Recorder's Office and BLM. (*Id.*)
13    MAC acquired actual title to the Claims from Infinity on April 15, 2024. (ECF Nos.
14 8-2 at 6-11; 55.) Around the same time, conflict over the ownership of the Claims began
15 to grow, as reflected in a series of communications between the parties, as well as
16 encounters at the site of the Claims. (ECF Nos. 55, 64 at 5-7.) The White Pine County
17 Sherriff was called on the Claims on multiple occasions. (*Id.*) Among other incidents,
18 Defendants assert that in late April and early May, armed men brandishing rifles or AR15
19 assault weapons approached Pasek and Sears at the Claims. (*Id.*)
20    MAC filed its original complaint on May 20, 2024, seeking declaratory relief that
21 Defendants' interests in the Claims are invalid and that Infinity's interest in the Claims
22 was not forfeited by their untimely recording of the Affidavit to Hold, as well as money
23 damages and an injunction prohibiting Defendants from asserting any rights on the
24 Claims. (ECF No. 1.) On July 16, MAC filed the Amended Complaint, maintaining its
25 claims for declaratory relief while also adding new tort and quiet title claims.[10] (ECF Nos.

---

[10]MAC asserts eight causes of action in the Amended Complaint, including (1) Declaratory relief—preemption by a federal statute; (2) Declaratory Relief—NRS § 517 *et. seq.*, is not a forfeiture statute; (3) Trespass (against all Defendants); (4) Conversion (against all Defendants); (5) An accounting (against Defendants Pasek, J. Salisbury, and P. Salisbury); (6) Quiet title (against all Defendants except White Pine County); (7)

4

34, 53, 55.)

On August 13, the Court held a hearing on Plaintiff's motion for a temporary restraining order (ECF No. 8). (ECF No. 51.) At the hearing, the parties stipulated to the terms of a limited interim restraining order, and the original motion for preliminary relief was denied as moot. (ECF Nos. 51, 56.) The Court directed an expedited briefing schedule for summary judgment motions in order to resolve the matter on the merits. (*Id.*) MAC and Defendants filed their respective Motions in late August and early September. (ECF Nos. 58, 64.) Defendants subsequently moved to supplement their original Motion, asserting that they recently discovered that Infinity failed to record an affidavit to hold or any other documentation in 2013—ten years before its delayed filing in 2023. (ECF No. 73.) In the interest of resolving the case on its merits, the Court granted Defendants' motion to supplement. (ECF No. 83.) White Pine County also filed its motion to dismiss. (ECF No. 62.)

The Court will address the summary judgment motions and then will turn to White Pine County's motion to dismiss.

## III.   DISCUSSION

MAC and the individual Defendants each assert that they are the rightful owners of the Claims at issue and seek relief on that basis. (ECF Nos. 64, 68.) The parties largely agree that this dispute rests on a central question of statutory interpretation: whether Infinity's failures to timely record affidavits of intent to hold automatically voided its mining claims under the Federal Land Policy and Management Act ("FLPMA"), 43 U.S.C. § 1744, or Nevada's statute requiring an annual affidavit by an owner or claimant, NRS § 517.230. Where there are no material issues of fact and the sole questions before the Court are ones of law, summary judgment is particularly appropriate. *See Homestead Ins. Co. v. Ryness Co.*, 851 F. Supp. 1441, 1443 (1992); *Aucutt v. Six Flags Over Mid-America*, 85 F.3d 1311, 1315 (8th Cir. 1996) ("Where the unresolved issues are primarily legal rather

---

Defamation (against Pasek); and (8) Violation of 42 USC § 1983 (against Defendant White Pine County. (ECF No. 55.)

than factual, summary judgment is particularly appropriate.").

Since the initiation of this action, the parties have contested the impact of Infinity's five-day delay in recording its 2023 Affidavit to Hold several months before closing the sale of its Claims to MAC. (ECF Nos. 51, 64, 68.) In their Supplement, Defendants argue for the first time that, per a recent search of the White Pine County Recorder's database, Infinity also failed to make *any* county recordings on the Claims in 2013, and that Infinity's claims were thus "void more than 10 years prior to the filing of this lawsuit . . . and prior to the location of new claims by Defendants." (ECF No. 73 at 5.) As a result, Defendants argue, they cannot be considered "claim jumpers." (*Id.*) Although the facts regarding the 2023 and 2013 filing deficits are distinct, the result of both deficits turns on the scope of the FLPMA and NRS § 517.230. The Court finds that neither recording deficiency resulted in forfeiture of Infinity's interest in the Claims.[11]

### A. Infinity's Late-Recorded 2023 Affidavit to Hold

There is no dispute that, regardless of the cause for the delay, Infinity's 2023 Affidavit to Hold was officially recorded on November 6—five days later than the deadline

---

[11]Plaintiff requests that the Court take judicial notice of (1) the order vacating prior orders and granting plaintiffs partial summary judgment in the case of *Masters v. Thompson*, No. CV 03-9418 (6th Judicial Dist. Court of Nev., Pershing Cty., 2003) (unpublished); (2) an affidavit from Russell A. Fields in *Masters* describing his role in advancing amendments to NRS § 517.230 in 1993; and (3) the 1993 bill summary and legislative history documents for Assembly Bill ("AB") 422, which amended NRS § 517.230. (ECF No. 58-1.) Defendants also request that the Court take judicial notice of the complaint and answer and counterclaim in *Masters*, as well as the California Court of Appeals' decision in *Crummett v. Miller*, 53 Cal. App. 4th 897 (1997). (ECF No. 64-1.) Under Federal Rule of Civil Procedure 201(b)(2), the Court may take judicial notice of facts that are "not subject to reasonable dispute" because they are "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." The Court takes limited notice of the AB 422 legislative history documents, because they are an accurate record, not subject to reasonable dispute, of the official hearings described therein and the related procedural history. The Court declines to take notice, however, of the specific factual, legal, or historic assertions made by contemporary legislators and drafters as part of that legislative history. The Court will similarly consider the Sears affidavit in *Masters*, but *only* to the extent it pertains to legislative history. The Court will not take judicial notice of the *Masters* or *Crummett* decisions to the extent the parties seek to do so to support the legal and factual conclusions of those courts. *See* Fed. R. Civ. P. 201(b).

set in NRS § 517.230. The Court considers whether the late recording left the Claims open for location under federal or state law. *See* 30 U.S.C. § 28.

### 1. FLPMA

Defendants argue that the late recording of Infinity's Affidavit to Hold resulted in forfeiture under federal law as set forth by FLPMA. (ECF No. 64 at 16-19.) FLPMA requires a claimant to file either a notice of intent to hold claims, an affidavit of assessment work, or a detailed reporting form with both the county in which the claims are located and the BLM "prior to December 31 of each year." 43 U.S.C. § 1744(a)(1)-(2). Section 1744(c) specifies that failure to file these documents on time "shall be deemed conclusively to constitute an abandonment of the mining claim," though failure to file in a timely manner under other federal laws will not be considered a failure to file. *Id.* at § 1744(c). *See also United States v. Locke*, 471 U.S. 84, 102 (1985) (missing FLPMA deadline by one day led to forfeiture of mining claims). Although FLPMA explicitly provides for forfeiture, the General Mining Law of 1872 ("Federal Mining Law"), 30 U.S.C. § 21, *et seq*., as amended in 1993, now requires miners to pay maintenance fees to the BLM and in doing so provides that this "claim maintenance fee shall be in lieu of the assessment work requirement . . . and the related filing requirements contained in section 1744(a) and (c) of [FLPMA]." 30 U.S.C. § 28f.

Here, the recording of Infinity's Affidavit to Hold on November 6, 2023, clearly complied with FLPMA's December 30 deadline. *See Locke*, 471 U.S. at 95. There are no gaps in Infinity's filings suggesting that they missed the 2023 filing year altogether. (ECF No. 1-1 at 2-28.) Defendants seem to argue that the Court should superimpose the Nevada deadline to file an affidavit under NRS § 517.230 over the specified deadline in FLPMA. But the cases Defendants cite do not support this conflation of state and federal law. *See Crummett v. Miller*, 53 Cal. App. 4th 897, 902 (1997) (addressing only the impact of failure to make filings with the BLM or the county in the 1992 and 1993 filing *years*, without addressing any state-law deadlines); *Locke*, 471 U.S. at 87 (finding that a delay beyond the December 30 deadline set by the FMPLA worked a forfeiture). The Court

accordingly finds that Infinity's ownership of the Claims was not voided under FLPMA as a result of the 2023 delay.

### 2. NRS § 517.230

The Court next considers whether the delayed filing of an affidavit to hold works a forfeiture under Nevada law, given the plain text and legislative history of NRS § 517.230.[12] The Court concludes that Section 517.230 is not a forfeiture statute.

NRS § 517.230 mandates that, on or before November 1 of each year, the owner or claimant of a mining claim must file and record an affidavit of their intent to hold the claim or an affidavit stating that they have performed labor or made improvements on the claim with the local county recorder. The Nevada statute specifies that an affidavit is considered *prima facie* evidence of intent to hold a claim or the performance of labor or the making of improvements. *See id.* at § 517.230(2), (4).

MAC argues that because Section 517.230 provides only that an affidavit is *prima facie* evidence of abandonment—while making no mention of the possibility of voided claims—the statute's plain language should be construed to mean that failure to file an affidavit does not work a forfeiture. (ECF No. 58 at 12-14.) *See Jepsen*, 209 P. at 502. The absence of forfeiture language in Section 517.230 is indeed notable, because other provisions of Chapter 517 of the Nevada Revised Statutes (governing mining claims) *do* explicitly provide that failure to comply results in voided claims. *Compare* NRS §§ 517.050(2) ("Any record of the location of a lode claim which does not contain all the

---

[12]"Where the language of a statute is plain and unambiguous, and its meaning clear and unmistakable, there is no room for construction, and the courts are not permitted to search for its meaning beyond the statute itself." *State v. Jepsen*, 209 P. 501, 502 (Nev. 1922). However, where a statute is subject to more than one reasonable interpretation, a court must look to other sources to discern its meaning, including legislative history and intent. *See Moody v. Manny's Auto Repair*, 871 P.2d 935, 938-39 (Nev. 1994). "[R]eason and public policy may be considered in determining what the legislature intended." *In re Contrevo*, 153 P.3d 652, 654 (Nev. 2007). In addition, a court considers "the statute's multiple legislative provisions as a whole" because "statutory interpretation should not render any part of a statute meaningless" or "produce absurd or unreasonable results." *Leven v. Frey*, 168 P.3d 712, 716 (Nev. 2007) (quoting *Harris Assocs. v. Clark County School Dist.*, 81 P.3d 532, 534 (Nev. 2003)).

8

requirements named in this section recoded on or after July 1, 1997, is void"), 517.110(3) (using the word "void"), 517.170(3) ("Any record of a tunnel right or location which does not contain all the requirements named in this section is void"), 517.195(2); *with* NRS § 517.230. "When a statute includes particular language in one section of a statute but omits it in another section of the same act, courts generally presume that the drafter of the statute acted intentionally and purposefully in the including the language in one provision and omitting it from another." *U.S. v. Garcia*, 939 F.Supp.2d 1216, 1227 (N.M 2013). Meanwhile, when the term "*prima facie* evidence" appears within a statute, it generally serves the limited purpose of regulating the burdens between the parties. *See, e.g.*, *Casey v. U.S.*, 276 U.S. 413, 418 (1928); *Adler v. Board of Educ.*, 342 U.S. 485, 506 (1952).

An analysis of the inclusions and omissions in Section 517.230 thus supports MAC's reading of the statute. But to the extent the statute remains arguably ambiguous as to the appropriate consequences of failure to file an affidavit—and because the Nevada Supreme Court has not directly ruled on the question of whether the current version of NRS § 517.230 works a forfeiture—the Court also turns to other sources for statutory interpretation, including legislative history and intent. *See Moody*, 871 P.2d at 938-39.

Laws similar to NRS § 517.230 have been in force in Nevada since at least 1887. *See, e.g.*, An Act for the Better Preservation of Titles To Mining Claims, Stat. Nev. 1887, ch. 143, § 2, https://perma.cc/AB5W-W3PS; An Act Relating to the Location, Relocation, Manner of Recording Lode and Placer Claims, Mill Sites, Tunnel Rights, Amount of Work Necessary to Hold Possession of Mining Claims and the Rights of Co-Owners Therein, Nev. Stat. 1897, ch. 136, § 10, https://perma.cc/LL93-RK77 (original version of Section 517.230). And, for almost as long, courts in Nevada have held that noncompliance with a recording statute will not automatically void a mining claim unless the statute expresses the legislature's clear and unambiguous intent to do so.

///

At the heart of these holdings is a fundamental canon of construction: Nevada law "does not favor forfeitures," so "statutes imposing them must be strictly construed." *Aguirre v. Elko Cnty. Sheriff's Off.*, 508 P.3d 886, 890 (Nev. 2022) (quoting *Wilshire Ins. Co. v. State*, 582 P.2d 372, 375 (Nev. 1978)). *See also Ford v. Campbell*, 92 P. 206, 208 (Nev. 1907) ("If . . . a failure to make a valid record works a forfeiture of prior existing rights, such legislation must be found clearly expressed in our state statute."); *Zerres v. Vanina*, 134 F. 610, 617-18 (C.C.D. Nev. 1905), *aff'd*, 150 F. 564 (9th Cir. 1907)[13]; *McCulloch v. Murphy*, 125 F. 147, 150 (C.C.D. Nev. 1903) (discussing federal mining law); *cf. Gustin v. Nev.-Pac. Dev. Corp.*, 125 F. Supp. 811, 813-14 (D. Nev. 1954) (failure to record within 90-day period rendered claim void where statute mandated that claims "shall be absolutely void" if untimely recorded).

Consistent with this canon of construction, courts in western states have regularly found that state statutes similar to NRS § 517.230 do not automatically work a forfeiture. *See, e.g.*, *Book v. Just. Mining Co.*, 58 F. 106, 118 (C.C.D. Nev. 1893) (finding that where there was "no provision in the statute to the effect that a failure to comply with its terms will work a forfeiture," claimants who did not record their improvements to a mining claim did not automatically forfeit it); *Last Chance Mining Co. v. Bunker Hill*, 131 F. 579 (9th Cir. 1904). Courts have reasoned that state statutory recording requirements originated alongside requirements for miners to *perform labor* to maintain their claims. In other words, the recording of an affidavit to hold or an affidavit of assessment work creates a consistent record to verify that a miner has met underlying work requirements—but the recording itself is not an equivalent freestanding requirement. *See, e.g., Book*, 58 F. at 118 (noting that the object of the recording act then in place was to make "proof as to the performance of the work or expenses incurred in the making of improvements" more accessible, but that "the act does not prevent, and was not intended to prohibit, the owner of a mining claim from making the necessary proof in any other manner, nor does it

---

[13]The Nevada Supreme Court has also favorably cited this discussion of Nevada law. *See Ford*, 92 P. at 209.

prohibit the contesting party from contradicting the facts stated in the affidavit"); *Zerres*, 134 F. at 618. Thus, a timely-filed affidavit "simply makes the record prima facie evidence of the facts therein stated."[14] *Book*, 58 F. at 118. *See also Coleman v. Curtis*, 30 P. 266, 267 (Mont. 1892) (addressing a parallel Montana recording statute and holding that the statute "relates, not to the effect of doing the work, or making the improvements, as required by law, but to the method of preserving prima facie evidence of the fact that such requirement has been fulfilled"); *Moodey v. Dale Consol. Mines*, 81 F.2d 794, 797 (9th Cir. 1936) (holding that the California mining recording statute then in effect—which included a *prima facie* evidence provision—did not work a forfeiture).

The legislative history underlying the present-day version of NRS § 517.230 also reflects this broader history. The current statute incorporates amendments which followed Congress' 1993 amendments to the Federal Mining Law, which eliminated the annual assessment work requirement, requiring payment of an annual fee to the BLM in its place. *See* 30 U.S.C. § 28f (current federal fee requirements). Because there was no longer a need to show performance of annual labor, leading to concern about anticipated loss in revenue to Nevada recorder offices, the Nevada Legislature amended its mining statutes to provide that miners "shall" record an annual affidavit of use in years when performance of labor is not required.[15] *See* A.B. 422, 67th Leg. (Nev. 1993); Summary of Legislation,

---

[14] In *Sisson v. Sommers*, 55 P. 829 (Nev. 1899), the Nevada Supreme Court found that a claimant's failure to meet certain location requirements for a mining claim resulted in a forfeiture of that claim "whether the laws and rules provide for forfeiture for noncompliance or not" because it was "necessary that the party continue substantially to comply, not only with the laws of congress, but with the valid laws of the state . . . upon which such right depends." 55 P. at 830 (discussing Nev. Stat. 1897, ch. 136, § 2). Upon first read, the holding in *Sisson* could have broad implications; however, the court found that the extent of that decision was limited to compliance "with the law in regard to the labor to be expended on the claim." *Zerres*, 134 F. at 617. It did not, by contrast, extend to the timeliness of recording affidavits under the original version of Section 517.230. *See id*. at 618; Nev. Stat. 1897, ch. 136, § 10. While Nevada mining laws laid out substantive requirements for recording which could void a claim if not substantially followed, Nevada statutes were "directory merely in so far as they relate[d] to the time for making the record." *Zerres*, 134 F. at 618.

[15] The 1993 Summary of Legislation describing the purpose of AB 422 notes that "the measure [amending Section 517.230] requires that holders of mining claims, who are

11

Nev. Leg. 67th Sess. (1993).  During a May 11, 1993, hearing on AB 422 in the Senate Committee on Natural Resources, legislators specifically discussed the potential consequences for failure to record an affidavit, as reflected in the hearing minutes. (ECF No. 58-1 (Legislative History) at 49-50.) Executive Director of the Nevada Department of Minerals Russell A. Fields (the primary drafter of the proposed amendment) explained to the Committee, "current state law does not set a requirement for filing with the county . . . [and] if a miner . . . had paid their $100 fee to the Bureau of Land Management (BLM), the claim would still be valid" even if a miner failed to record an affidavit. (*Id.*)[16] Several senators expressed concern that the word "shall" could create confusion and imply that failure to record an affidavit would result in voided claims, questioning whether explicit language should be added to preclude that reading of the statute. (*Id.*) But Fields indicated that he believed "*prima facie* evidence" language would be sufficient to prevent that interpretation, stating, "it was not the state's intent to get into the business of declaring a mining claim void," and that voiding claims is "the federal government's job." (*Id.*) The Committee minutes further note that Fields "stressed [AB] 422 is merely attempting to set up a mechanism to establish an orderly record of mining claims within each county." (*Id.*)

The Court construes Section 517.230 to reflect its most logical meaning and this historic and legislative context: A miner who timely records an affidavit to hold has provided *prima facie* evidence that the owner or claimant of the mining claim intended to

---

no longer required to show proof-of-labor or improvements, must file annual 'affidavits of intent to hold' their claims" because "Congress recently changed the requirement for showing proof-of-labor or improvements to a $100 fee for the holding of a claim…result[ing] in a significant reduction" in the funding to recorders in Nevada counties. (ECF No. 58-1 at 25). *See* A.B. 422 (Chapter 173), Summary of Legislation, Nev. Leg. 67th Sess. (1993).

[16]MAC also cites to Fields' affidavit in *Masters*, CV 03-9418, where Fields stated that "[t]he amendment of NRS 517.230 by A.B. 422 was never intended to create a change in the law that would result in the forfeiture of a federal mining claim, even if an affidavit of intent to hold were not recorded." The Court weighs this as part of the relevant legislative history, but notes that, because Court does not rely on the reasoning in the case itself, Defendants' extended discussion of *Masters* is largely inapposite. (ECF No. 64 at 11-12.)

hold the claim, but failure to file a timely affidavit does not by itself work a forfeiture, and the party asserting that a forfeiture occurred must still prove its occurrence. Here, Infinity recorded its 2023 Affidavit to Hold on November 6, several months before any Defendants located their claims. Because the Affidavit was published in White Pine County Records when Defendants sought to establish new claims, Defendants' arguments that they believed the Claims to be abandoned because no work was properly occurring on the site is unavailing, as Infinity had effectively cured the deficiency. *C.f. Yosemite Gold Min. & Mill. Co. v. Emerson*, 208 U.S. 25 (1908) (discussing the curing of a claim defect).

### B.    Infinity's 2013 Failure to Record

The Court next considers Defendants' supplemental argument—that Infinity's Claims have in fact been legally void since 2013, more than a decade before this action commenced. (ECF No. 73.) Defendants specifically assert that a database search of the White Pine County Recorder's Office reveals that in 2013, Infinity failed *entirely* to record a notice of intent to hold or affidavit of annual assessment work with the county on either the Solomon or MAV claims, voiding the Claims under FLPMA and making them open for relocation as of December 31 of that year. (*Id.* at 5, 4-18.) MAC does not appear to contest the accuracy of the White Pine County database records or otherwise dispute that Infinity failed to record affidavits in 2013 and has not relocated the claims since that time. MAC instead again argues that Defendants mischaracterize the requirements of the FLPMA and NRS § 517.230, and that—because Infinity timely filed its BLM assessment fees as required under the Federal Mining Law—even Infinity's failure to file an affidavit altogether in 2013 did not result in forfeiture of its claims. (ECF No. 74.) The Court agrees with MAC.

Whereas Infinity's delay in filing its 2023 Affidavit to Hold did not implicate Section 1744 of FLPMA because Infinity complied with the *federal* December deadline that year, Infinity's failure to file an any of the documents specified in Section 1744 in 2013 does on its face implicate FLPMA's deadline. *See* 43 U.S.C. § 1744(a)(1)-(2), (c) (requiring a holder of a claim to file either a notice of intent to hold, an affidavit of assessment work, or a detailed reporting for with both the county and the BLM, and providing that failure to

13

file these documents on time "shall be deemed conclusively to constitute an abandonment of the mining claim"). This makes the 2013 deficiency seemingly more severe than the 2023 delay. MAC argues, however, that Section 1744(c) is inapplicable here, because of the 1993 amendments to the Federal Mining Law requiring miners to pay maintenance fees to the BLM and providing that a claim maintenance fee "shall be *in lieu of the assessment work requirement* contained in the Mining Law of 1872 (30 U.S.C. 28 to 28e) *and the related filing requirements contained in section 1744(a) and (c) of Title 43*." 30 U.S.C. § 28f (emphasis added). Plaintiff argues that under the current federal mining law regime, when a party has properly paid its BLM maintenance fees, the recording requirement in Section 1744(c) is waived. Here, the BLM serial register shows that Infinity timely paid its BLM maintenance fees for 2013.[17] (ECF No. 8-2 at 29.) The Court ultimately agrees with MAC's reading of the relationship between these federal mining statutes.

To start, Defendants primarily rely on cases which do not account for the impact of the 1993 amendments to the Federal Mining Law. In particular, they point to the Supreme Court's ruling in *Locke*, 471 U.S. 84, and the Ninth Circuit's unpublished decision in *Huntley v. Newmont Mining Corp.*, 36 F. App'x 336, 337 (9th Cir. 2002). In *Locke,* which also arose from a dispute in White Pine County, the Supreme Court found that FLPMA mandates forfeiture of unpatented claims when a claim holder fails to adhere by the Act's strict deadlines—even when a county filing is late by only a single day, and even when there is no independent state law declaring claims with late filings void. *See* 471 U.S. at 86. In *Huntley,* the Ninth Circuit affirmed a Nevada district court holding that a party's failure to file an affidavit during the 1984 calendar year meant the claims were abandoned at the end of that year under Section 1744(a)(1), regardless of whether the

---

[17]Defendants argue that no evidence has been provided to the Court that payments to the BLM were in fact maintenance fee payments. (ECF No. 79 at 3.) However, the serial register includes entries specifically titled "maintenance fee payments," and shows that these payments were accepted in August of 2013 and the surrounding years. (ECF No. 8-2 at 29.)

party had recorded an affidavit on time per the county's own separate timeline. *See* 36 F. App'x at 337. *Locke* and *Huntley* appear to mirror the circumstances in this action, but as Plaintiff notes, the delayed recordings at issue in both cases occurred *before* the Federal Mining Law was amended in 1993. Because BLM maintenance fee payments were not required in 1984 and 1985, when *Locke* was decided and the filing year implicated in *Huntley*, neither decision addressed whether such payments would satisfy current federal requirements, the primary question remaining here.

Defendants further argue that the 1993 changes had no effect on Infinity's 2013 filing requirements because (1) the provision waiving partial compliance was enacted in 2013, not 1993, and (2) "there is no clear indication in the text of the 2013 amendment that a Notice of Intent was not required to be filed with the local recording office in accordance with Nevada Law and the FLPMA". (ECF No. 79 at 5.) As to the first argument, Defendants provide no citation or support for their position that the relevant change to the Federal Mining Law occurred in 2013; the 1993 version of the statute included language regarding claim maintenance fees to be made in lieu of Section 1744(a) filings.[18] *See* Pub. L. 103-66, Title X, § 10101, Aug. 10, 1993, 107 Stat. 40.

The Court is also unpersuaded by Defendants' second argument, that "filing requirements for the claims at issue in this case were not waived, only the assessment related filings were waived under the 1993 law changes—so long as maintenance fees were paid." (ECF No. 79 at 4-5.) This position does not accurately reflect the relationship between the amended Federal Mining Law's requirements in 30 U.S.C. § 28f and FLPMA's requirements in 43 U.S.C. § 1744. The applicable version of 30 U.S.C. § 28f provides only that a maintenance fee is assessed in lieu of filing requirements contained in "[S]ection 1744(a)" of FLPMA—without further distinguishing between the subsections of Section 1744(a) applying to county and BLM filings, or otherwise specifying that the

---

[18]Regardless of intervening changes to the statute distinguishing between placer and lode claims, the current version of the statute became effective March 26, 2013, before the end of the year. *See* Pub.L. 113-6, Div. F, Title IV, § 1403, Mar. 26, 2013, 127 Stat. 419.

excusal of recording applies to some, but not all, types of filings contemplated in Section 1744(a). Section 1744(a) itself requires holders of unpatented claims to file *either* a notice of intent to hold *or* an affidavit of assessment work performed to be filed with the county *or* a detailed report—the statute does not require a miner to record both their intention to maintain claims *and* to record that assessment work was performed during the year. *See id.* This makes sense: as the Court has already discussed, recording requirements are tied to the historic requirement for miners to perform labor to maintain their claims—Section 1744(a) does not merely impose a free-floating system of duplicative filings, and the 1993 amendments to the Federal Mining Law altered the underlying assessment work landscape itself. It would be illogical, with this in mind, for the Court to conclude that amendments to the Federal Mining Law replaced the requirement to record an assessment fee affidavit while leaving in place a requirement to record an affidavit of intent to hold at the county-level or else face forfeiture under FLPMA. Such a reading would amount to using FLPMA's forfeiture provision to increase state law penalties, *after* miners have already entirely satisfied federal claim maintenance requirements by paying a fee to the BLM.[19]

Defendants further argue that 30 U.S.C. § 28j of the amended Federal Mining Law should be read to leave FLPMA's recording requirements untouched and mandate a finding that Infinity forfeited its claims. (ECF No. 79.) Defendants' citation to Section 28j, however, is misplaced, because Section 28j provides only that "[n]othing in this subtitle [30 U.S.C. § 28f] shall change or modify the requirements *of [Section] 1744(b)* of the [FLPMA and the application of section 1744(c) with respect to the filings required in section (b)]." As opposed to Section 1744(a)—which addresses periodic claim maintenance recordings—Section 1744(b) applies to recordation of *notices or certificates of location*. *See* 43 U.S.C. § 1744(b). Section 28j of the Federal Mining Law thus serves

---

[19]As the Court has also noted, NRS § 517.230 itself reflects the Nevada Legislature's understanding that Federal Mining Law amendments eliminated the need to record an affidavit in order to be in compliance with FLPMA. Recognizing this change, the Nevada legislature nevertheless chose to apply a *prima facie* evidence standard, not a forfeiture standard, in its own statute. (ECF Nos. 8-2, 74 at 5.)

to clarify that payment of maintenance fees to the BLM does not waive FLPMA's requirement to record appropriate documentation to establish *new* claim locations with both the BLM and the county—the new provisions waive only the requirement to record documents on a yearly basis for *established* claims. This is consistent with Plaintiff's position.

Because evidence in the record demonstrates Infinity paid maintenance fees to the BLM as required in 2013, the Court thus finds that Infinity's failure to record an affidavit in White Pine County that year did not result in forfeiture under FLPMA. The Court further concludes that Infinity's failure to file did not result in forfeiture under NRS § 517.230 alone, given its finding that Section 517.230 does not provide for forfeiture. The impact of the 2013 recordation defect is that Infinity cannot turn to documentation to establish *prima facie* evidence of the performance of labor or the intent to hold its claims that year. *See* NRS § 517.230(2), (4). In some circumstances, this could present a significant evidentiary inconvenience for a claim holder. Here, however, it is clear that Infinity timely met recording requirements for the next nine years after 2013, during which time it also continued to perform labor at the site. The 2013 defect was only discovered months after this action began. In short, all evidence in the record and subsequent recordings suggests that Infinity intended to hold its claims in 2013 and after 2013, and Defendants have not proffered or cited to any relevant countervailing evidence.

In sum, the Court finds that neither Infinity's delayed 2023 filing nor its failure to file an affidavit to hold in 2013 resulted in forfeiture of the Claims. MAC's interest in the Claims it purchased from Infinity is valid, and the mineral lands were not open for location when Defendants recorded their new interests. The Court thus grants summary judgment for Plaintiff as to its declaratory relief and quiet title claims (claims one, two and six), to the extent Plaintiff requests a judicial determination that MAC is the owner of the Claims, that Defendants have no ownership interest in the Claims and their claims are void *ab initio*, and that failure to comply with NRS § 517.230 does not work an automatic forfeiture. (ECF No. 55.)

///

## C. White Pine County's Motion to Dismiss (ECF No. 62)

White Pine County separately moves to dismiss all claims against it under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 62.) *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). MAC has agreed that the only claim in the Amended Complaint applicable to White Pine County is MAC's eighth cause of action, alleging violations under 42 U.S.C. § 1983.[20] (ECF No. 65 at 2-3.)

Plaintiff alleges that White Pine County is liable under Section 1983 because, during an investigation of incidents occurring between MAC and individual Defendants at the Claims in early 2024, White Pine County Recorder Chrissie Shady erroneously informed a Sherriff's Department deputy that MAC's claims were "null and void." (ECF Nos. 55 at 17, 65.) As a result of this instruction, the Deputy Sheriff ordered MAC removed from the Claims, leading to more standoffs and preventing MAC from continuing mining operations. (*Id.*) MAC was not notified of the County's incorrect conclusion that the Claims were forfeited, and had no opportunity to challenge the decision. (*Id.*) Plaintiff alleges that these events violated MAC's Fifth and Fourteenth Amendment rights not to be deprived of property without due process. (ECF No. 55 at 17.)

To state a Section 1983 claim, a plaintiff must show that a defendant (1) acted under color of state law, and (2) deprived the plaintiff of a constitutional right. *See, e.g., Borunda v. Richmond*, 885 F.2d 1384, 1391 (9th Cir. 1989). White Pine County argues that MAC's Section 1983 claim fails as a matter of law because the Recorder is entitled to qualified immunity. (ECF No. 62 at 9-10.) As an initial matter, while the parties focus on whether or not the Recorder is immune from suit, the Court notes that Plaintiff names

---

[20]White Pine County initially sought dismissal of MAC's first and second causes of action for declaratory relief, as well as MAC's fourth cause of action for conversion. (ECF No. 62.) In its response, MAC notes that MAC and White Pine County have conferred in light of "confusion as to what is being asserted by MAC against the County, as the claims against the County are limited" to only the Section 1983 claim. (ECF No. 65 at 2-3.) The Court confirms, for the purpose of clarity, that claims one, two, and four are dismissed to the extent they are alleged against White Pine County.

only White Pine County as a government Defendant; neither Recorder Chrissie Shady nor any Sheriff's Department officials are named in the Amended Complaint. (ECF No. 55.). Under Section 1983, a municipal body can be sued if the constitutional violation was the result of a custom or a policy, *see Monell v. Department of Social Services of the City of New York*, (1978) 436 U.S. 658, but Plaintiff does not appear to allege that White Pine County has any such custom or policy. Regardless, because the County "does not dispute that the [County] Recorder acted under color of law," the Court addresses the qualified immunity argument, which may be relevant to the viability of an amended claim. (ECF No. 62.)

The Supreme Court has explained that "[t]he doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity protects official actors unless a court determines (1) that the official violated a plaintiff's constitutional rights, and (2) that the constitutional right is clearly established at the time of the conduct. *See Lal v. Cal*, 746 F.3d 1112, 1116 (9th Cir. 2014). A government official who reasonably but mistakenly believes that his actions are warranted under state law may be entitled to qualified immunity. *See Center for Bio-Ethical Reform, Inc v Los Angeles County Sherriff Department.*, 533 F.3d 780, 791-93; *Grossman v. City of Portland*, 33 F.3d 1200, 1209 (9th Cir. 1994).

Here, Plaintiff fails to allege facts to support that the County or its officials violated a clearly established constitutional right. *See Harlow*, 457 U.S. at 818. It is not apparent that the Recorder—who is not a trained attorney and never represented herself as providing legal advice—violated the Fifth or Fourteenth Amendments by unreasonably misinterpreting a recording statute, nor that the Deputy Sherriff acted unreasonably in responding to disturbances occurring because of the ownership dispute. Although the Court has found that Infinity did not forfeit its Claims, that question has been the primary subject of this litigation, reflecting the underlying statutory ambiguity. *See Center for Bio-*

*Ethical Reform*, 533 F.3d at 791-93 (recognizing that officials who make reasonable mistakes of law may be entitled to immunity). Plaintiff argues that it was deprived of procedural due process because ""[e]ven if the error which resulted in the deprivation of MAC's property rights to their claims is found to be one that a reasonable recorder could have made, no reasonable state actor would have made this decision without affording the affected party notice or hearing, or without first contacting the BLM." (ECF No. 65 at 8.) But it is not clear why or how the Recorder is responsible for ensuring procedural protections under these circumstances, where she provided a statement she reasonably believed to be true about the late-filed records, and where the BLM's decisions and procedures are not under her purview.

The Court thus grants White Pine County's motion to dismiss Plaintiff's Section 1983 claim (claim eight) (ECF No. 62). White Pine County is accordingly dismissed from this action.

## IV. CONCLUSION

The Court notes that the parties made several arguments and cited several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion, as they do not affect the outcome of the motion before the Court.

It is therefore ordered that Plaintiff MAC's motion for partial summary judgment (ECF No. 58) is granted as to Plaintiff's declaratory relief and quiet title claims, as specified herein.

It is further ordered that Defendants HLC, Mike Pasek, June Salisbury, and Phil Salisbury's first motion for summary judgment (ECF No. 64) is denied.

It is further ordered that Defendant White Pine County's dismiss (ECF No. 62) is granted. Dismissal of White Pine County is with prejudice.

DATED THIS 12th Day of November 2024.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE